RECORD NO. 13-4686

In The

# United States Court of Appeals

## For The Fourth Circuit

## UNITED STATES OF AMERICA,

*Plaintiff – Appellee*,

**v.**

## THOMAS MARSHALL BYRD,

*Defendant – Appellant*.

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF NORTH CAROLINA AT GREENSBORO

————————

## BRIEF OF APPELLANT

————————

Ferris R. Bond
BOND & NORMAN
777 6th Street, NW, Suite 410
Washington, DC  20001
(202) 423-3859

*Counsel for Appellant*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF SUBJECT MATTER
AND APPELLATE JURISDICTION ....................................................1

ISSUES PRESENTED FOR REVIEW ................................................2

STATEMENT OF THE CASE.............................................................3

    The Indicted Charges....................................................................3

    The Terms of The Plea Agreement...............................................4

    Relating to the Amount of Crack Cocaine ...................................5

    Questions Relating To The Appeal Waiver On..............................7

    No Inquiry Regarding Possibility of Career Offender Determination ...........7

    The Pre-Sentence Investigation ...................................................8

    18 U.S.C. § 3553 Facts ...............................................................8

    The First Sentencing On September 11, 2012..............................10

    The Second Colloquy Related to Quantity ..................................11

    The Sentence Imposed On September 11, 2012............................13

    The Sentence Was Appealed and On Joint Motion of The Parties
    Remanded for Re-Sentencing ......................................................13

    A Second Sentencing Hearing Held on July 29, 2013 ..................14

    The Objections To the Presentence Report ..................................14

i

SUMMARY OF ARGUMENT .............................................................................16

ARGUMENT ..................................................................................................18

    1.    The trial court abused it's discretion when it denied Appellant Byrd's motion to withdraw his plea of guilty as to count 5 in that ....................................................................................................18

        A.    The Rule 11 inquiry was inadequate because it did not inquire if Appellant Byrd was aware that he could be sentenced as a career offender ...................................18

        B.    That the plea was not knowing and voluntary because Appellant Byrd mistakenly stipulated to having distributed 5 kilograms or more of cocaine when in fact the plea agreement called for a plea of only 280 grams or more of cocaine ......................................................18

        C.    Appellant reasonably believed the government had agreed not to use his conviction on March 7, 2000 when he was 17 years of age as a basis to allow him to be designated a career offender and thereby facing a much longer prison sentence..............................................18

STANDARD OF REVIEW ...............................................................................18

ARGUMENT ..................................................................................................18

    2.    The trial court abused its discretion when over objection it relied upon a North Carolina drug conviction committed when appellant was 17 as predicate convictions allowing him to be designated a career criminal designation pursuant to U.S.S.G. § 4B1.1 ....................................................................................................23

        A.    Standard of Review................................................................23

        B.    Argument ...............................................................................23

3.     The District Court's Sentence of Appellant Byrd to a combined sentence of 240 months should be reversed because it is greater than necessary, unreasonable, and conflicts with the sentencing Goals of 18 U.S.C. § 3553 in that ......................................................26

STANDARD OF REVIEW .....................................................................26

The trial court erred in imposing a greater sentence upon Appellant than the sentence imposed upon the codefendant who was sentenced to only 84 month despite having a criminal record and culpability similar to that of Appellant.
The trial court plainly erred in not considering the disparity in sentences received by defendants in like positions who enter pleas in districts that have fast track programs.  Had the trial court done so, it would have determined that a combined sentence of 240 months effect the sentencing goals of 18 U.S.C. § 3553 ..............................................................................27

The trial court plainly erred in not considering the disparity in sentences received by defendants in like positions who enter pleas in districts that have fast track programs.  Had the trial court done so, it would have determined that a combined sentence of 240 months effect the sentencing goals of 18 U.S.C. § 3553 ..............................................................................29

The error listed above combined with the facts that were presented at sentencing makes plain and clear that the combined sentence of 240 months is greater than necessary to meet the four express purposes of sentencing are: (1) retribution, (2) deterrence, (3) incapacitation, and (4) rehabilitation. Imposition of a sentence of the statutory mandatory minimum of 10 years followed by a consecutive sentence of 60 months would is sufficient to satisfy those four purposes.............................................30

Appellant Byrd should be Relieved of the Appeal Waiver, as His Unreasonable Sentence has Resulted in a Miscarriage of Justice ..................................................................................31

CONCLUSION .................................................................................................33

ORAL ARGUMENT IS REQUESTED ...............................................................34

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Appleby v. Warden*, *N. Reg 'IJail & Carr. Facility*,
  595 F.3d 532 (4th Cir. 2010) ..................................................................19, 20

*Berry v. United States*,
  412 F.2d 189 (3d Cir. 1969) ...........................................................................21

*Dorsey v. United States*,
  132 S. Ct. 2321 (2012).........................................................................1, 7, 13

*Gall v. United States*,
  552 U.S. 38 (2007).............................................................................26, 28

*George v. Black*,
  732 F.2d 108 (8th Cir. 1984) ..........................................................................20

*Graham v. Florida*,
  130 S. Ct. 2011 (2010)....................................................................................25

*King v. Dutton*,
  17 F.3d 151 (6th Cir. 1994) ............................................................................20

*Koon v. United States*,
  518 U.S. 81 (1996)..........................................................................................23

*Miller v. Alabama*,
  132 S. Ct. 2455 (2012).....................................................................................25

*Roper v. Simmons*,
  543 U.S. 55, 125 S. Ct. 1183 (1995) ...............................................................25

*Shelton v. United States*,
  246 F.2d 571 (5th Cir. 1957),
  *rev'd on confession of error on other grounds*,
  356 U.S. 26, 78 S. Ct. 563, 2 L. Ed. 2d 579 (1958) ......................................19

*Steele v. Murphy*,
    365 F.3d 14 (1st Cir. 2004).........................................................................20

*United States v. Andis*,
    333 F.3d 886 (8th Cir. 2003) ....................................................................32

*United States v. Arrelucea-Zamudio*,
    581 F.3d 142 (3d Cir. 2009) ...............................................................29, 30

*United States v. Booker*,
    543 U.S. 220, 125 S. Ct. 738 (2005) .........................................................27

*United States v. Bowman*,
    348 F.3d 408 (4th Cir. 2003) .....................................................................18

*United States v. Carter*,
    564 F.3d 325 (4th Cir. 2009) .....................................................................26

*United States v. Collington*,
    461 F.3d 805 (6th Cir. 2006) .....................................................................31

*United States v. Dyess*,
    478 F.3d 224 (4th Cir. 2007) .....................................................................18

*United States v. Gomez-Herrera*,
    523 F.3d 554 (5th Cir. 2008) .....................................................................29

*United States* v. *Goodman*,
    165 F.3d 169 (2d Cir. 1999) ......................................................................32

*United States v. Guillen*,
    561 F.3d 527 (D.C. Cir. 2009)....................................................................32

*United States v. Hahn*,
    359 F.3d 1315 (10th Cir. 2004) ............................................................32, 33

*United States v. Jackson*,
    523 F.3d 234 (3d Cir. 2008) ......................................................................33

*United States v. Johnson*,
    410 F.3d 137 (4th Cir. 2005) ........................................................31

*United States v. Khattak*,
    273 F.3d 557 (3d Cir. 2001) ........................................................32

*United States v. Layton*,
    564 F.3d 330 (4th Cir. 2009), *cert. denied*,
    2009 U.S. LEXIS 6486 ........................................................ 26-27

*United States v. Littlejohn*,
    224 F.3d 960 (9th Cir. 2000) ........................................................20

*United States v. Lynn*,
    592 F.3d 572,
    2010 U.S. App. LEXIS 1927, HN 12 (4th Cir. 2010) ..................................27

*United States v. Mason*,
    52 F.3d 1286 (4th Cir. 1995) ........................................................23

*United States v. Morse*,
    36 F.3d 1070 (11th Cir. 1994) ........................................................20

*United States v. Perez-Pena*,
    453 F.3d 236 (4th Cir. 2006) ........................................................29

*United States v. Rodriguez*,
    527 F.3d 221 (1st Cir. 2008)........................................................29

*United States v. Russell*,
    686 F.2d 35,
    222 U.S. App. D.C. 313 (D.C. Cir. 1982) ......................................20

*United States v. Salerno*,
    66 F.3d 544 (2d Cir. 1995) ........................................................21

*United States v. Salmon*,
    944 F.2d 1106 (3d Cir. 1991) ........................................................21

*United States v. Shedrick*,
  493 F.3d 292 (3d Cir. 2007) ...........................................................33

*United States v. Snelson*,
  555 F.3d 681 (8th Cir. 2009) .........................................................32

*United States v. Stitt*,
  250 F.3d 878 (4th Cir. 2001) .........................................................23

*Wall v. United States*,
  500 F.2d 38 (10th Cir. 1974) ........................................................20

## CONSTITUTIONAL AMENDMENTS

U.S. CONST. amend. VIII ...................................................................24

U.S. CONST. amend. XIV ...................................................................24

## STATUTES

18 U.S.C. § 922(g)(1)...........................................................................4

18 U.S.C. § 924(a)(2)............................................................................4

18 U.S.C. § 924(c) ...............................................................................8

18 U.S.C. § 924(c)(1)(A)(i) .............................................................3, 15

18 U.S.C. § 3231....................................................................................1

18 U.S.C. § 3553.........................................................................*passim*

18 U.S.C. § 3553(a) ..............................................................27, 29, 30

18 U.S.C. § 3553(a)(2).........................................................................28

18 U.S.C. § 3553(a)(6).........................................................................28

18 U.S.C. § 3742(a) ..............................................................................4

21 U.S.C. § 841(a)(1) ....................................................................................3, 4

21 U.S.C. § 841(b)(l)(A) .......................................................................3, 4, 11, 15

21 U.S.C. § 841(b)(1)(C) ..................................................................................3

21 U.S.C. § 846 .............................................................................................3

28 U.S.C. § 2255 ..........................................................................................5

**RULE**

Fed. R. Crim. P. 11 ..............................................................................19, 20, 22

**GUIDELINES**

U.S.S.G. § 2K2.1 .........................................................................................14

U.S.S.G. § 3E1.1(a) ........................................................................................5

U.S.S.G. § 3E1.1(b) ........................................................................................5

U.S.S.G. § 4B1.1 .....................................................................................*passim*

U.S.S.G. § 4B1.1(c)(3) ....................................................................................8

U.S.S.G. § 4B1.2 .........................................................................................24

U.S.S.G. § 5H1.3 .........................................................................................33

U.S.S.G. § 5K3.1 .........................................................................................29

## STATEMENT OF SUBJECT MATTER
## AND APPELLATE JURISDICTION

The District Court has jurisdiction in this case pursuant to 18 U.S.C. § 3231.

The appeal of Appellant Thomas Marshall Byrd, hereinafter "Appellant Byrd"

arises from a guilty plea,  sentencing and final judgment entered in criminal case

11-Cr-203 in the United States District Court for the Middle District of North

Carolina before Chief Judge William L. Osteen, Jr.  Final Judgment was entered on

October 5, 2012.  (Apx. 9, 91).  An appeal was noted and taken on the sentence

imposed by the trial court on October 12, 2012.  (Apx. 10, 97).  On joint motion of

the United States and Appellant Byrd in Record No. 12-4813 this Court remanded

Appellant Byrd's case to the trial court on March 21, 2012 with instructions to

impose a sentence giving Appellant Byrd the benefit of the Fair Sentencing Act's

revised statutory mandatory minimums as they applied to the Career Offender

calculation based on *Dorsey v. United States*, 132 S. Ct. 2321 (2012).  (Apx. 11,

99, 100, 101).  On July 29, 2013 a second sentencing hearing was held before the

Honorable William L. Osteen, Jr.   Appellant Byrd was re-sentenced.  (Apx. 110).

An amended Judgment was entered on September 12, 2013.  (Apx. 157).  A

notice of appeal of the amended judgment was timely filed on September 12, 2013.

(Apx. 13, 163).

## ISSUES PRESENTED FOR REVIEW

Issue 1.    Whether or not Appellant Byrd's plea was knowing and voluntary when he was not advised during the Rule 11 inquiry that he may be determined to be a career offender facing an enhanced sentencing recommendation under the United States Sentencing Guidelines?

Issue 2.    Whether the Sentencing guidelines were incorrectly calculated, by using Appellant Byrd's conviction of March 7, 2000 as a predicate to designate Appellant a career offender because in the plea agreement the government agreed not to file an information of prior conviction for his conviction of selling cocaine and possession with intent to manufacture sell and deliver cocaine on March 7, 2000?

Issue 3.    Whether the trial court plainly erred in not considering the disparity in sentences received by defendants in like positions who enter pleas in districts that have fast track programs.  Had the trial court done so, whether it would have determined that a combined sentence of 240 months in prison followed by 5 years of supervised release complies with the sentencing goals of 18 U.S.C. § 3553?

Issue 4.    Whether Appellant Byrd's combined sentence totaling 240 months in prison followed by 5 years of supervised release is greater than necessary, unreasonable and conflicts with sentencing goals of 18 U.S.C. § 3553?

Issue 5.    Whether the error listed above combined with the facts that were presented at sentencing makes  plain and clear that the combined sentence of 240 months in prison followed by 5 years of supervised release is greater than necessary to meet the four express purposes of sentencing – (1) retribution, (2) deterrence, (3) incapacitation, and (4) rehabilitation?

Issue 6.    Whether Imposition of a sentence of the statutory minimum is sufficient to satisfy those four purposes.

Issue 7.   Whether Appellant Byrd should be relieved of the appeal waiver, as his unreasonable sentence has resulted in a miscarriage of justice?

## STATEMENT OF THE CASE

**The Indicted Charges:**

On June 27, 2011Thomas Marshall Byrd and Lemonn Orlando Washington were named in a six-count indictment filed by a federal grand jury in the Middle District of North Carolina.  The indictment charged relating to Appellant were the following:

> **Count One** that from in or about 2009, continuing up to and including April 1, 2010,  that Thomas Marshall Byrd and Lemonn Orlando Washington conspired to (Object One) distribute 50 grams or more of cocaine base ("crack''), and (Object Two) to distribute quantities of cocaine hydrochloride, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A).

> **Count Three** charged, Thomas Marshall Byrd and Lemonn Orlando Washington possessed with the intent to distribute 137.6 grams  of cocaine base ("crack"), in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A).

> **Count Four** charged Thomas Marshall Byrd and Lemonn Orlando Washington with possession with the intent to distribute 252.0 grams of cocaine hydrochloride, in violation of21 U.S.C. §§ 841(a)(1) and (b)(1)(C).

> **Count Five** charged  Appellant with possession of a firearm in furtherance of a of drug trafficking crime, that is, in violation of 18 U.S.C. § 924(c)(l)(A)(i).

> **Count Six** charged Appellant with being a felon in possession of a firearm having been convicted on March 7, 2000 of Sale of Cocaine and Possession With Intent to Manufacture, Sell, and

Deliver Cocaine, in violation of 18U.S.C. §§ 922(g)(1) and 924(a)(2).[1]

(Apx. 4, 15-18).

**The Terms of The Plea Agreement:**

On June 1, 2012 Appellant Byrd entered into a plea agreement with the United States. The terms relevant to this appeal are as follows:

Appellant agreed to enter guilty pleas to Object One of Count One and to Count Five of the indictment. Appellant agreed that the substance involved in the offense alleged in object one of Count One of the indictment for which he is accountable is 5 kilograms of cocaine base ("crack").[2]

In exchange for the government not filing an Information of Prior Conviction for his conviction of Sell Cocaine and Possess With Intent to Manufacture, Sell, and Deliver Cocaine on March 7, 2000, Appellant Byrd agreed to waive his right to appeal whatever sentence is imposed on any ground, including any appeal right conferred by 18 U.S.C. § 3742(a), and further to waive any right to contest the conviction or the sentence in any post-conviction

---

[1] Codefendant Lemonn Orlando Washington was charged in Count 2 with possession with intent to distribute an additional 83.6 grams of cocaine base ("crack"), in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). (Apx. 15-18).
[2] At his sentencing, the record reflects that the agreement actually called for Appellant Byrd to plead guilty to 280 grams of cocaine base. The 5 kilogram quantity that listed in the plea agreement and factual basis was a mistake. (Apx. 76, 79).

4

proceeding, including any proceeding under 28 U.S.C. § 2255, excepting the

defendant' s right to appeal based upon grounds of

> 1) ineffective assistance of counsel,
>
> 2) prosecutorial misconduct not known to the defendant at the time of the defendant's guilty plea,
>
> 3) a sentence in excess of the statutory maximum, and
>
> 4) a sentence based on an unconstitutional factor, such as, race, religion, national origin, or gender.[3]  (Apx. 40).

A factual basis for Appellant Byrd's guilty pleas was agreed upon and

entered into on May 30, 2012.  (Apx. 34).

On June 12, 2012, Appellant Byrd entered pleas of guilty pursuant to the

plea agreement.  The trial judge conducted a Rule 11 inquiry before accepting his

guilty plea.  (Apx. 47).

The plea colloquy included the following:

**Relating to the Amount of Crack Cocaine**:

> **THE COURT:** …And Mr. Byrd has further agreed that the substance involved in the offense alleged in Object One of Count One is 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine base, or crack…

---

[3] The agreement also contained a provision requiring the government to dismiss the remaining counts in the indictment.  The agreement provided that if the Court determined at the time of sentencing that the defendant qualifies for a two-level decrease in the offense level for acceptance of responsibility pursuant to U.S.S.G. § 3El.l(a), and that the offense level prior to the operation of that guideline is 16 or greater, then the United States will recommend an additional one-level decrease, pursuant to U.S.S.G. § 3E1.1(b).  (Apx. 43 – 44).

Is that your understanding of Mr. Byrd's plea agreement in this case?

**DEFENSE COUNSEL:** Yes, Your Honor.

**THE COURT:** And does this plea agreement contain all the terms and conditions of Mr. Byrd's agreement with the United States?

**DEFENSE COUNSEL:** Yes, Your Honor.

**THE COURT:** Mr. Byrd, is my summery of the plea agreement the same as your understanding of the terms of your plea?

**THE DEFENDANT:** Yes, sir…

**THE COURT:** … I do want to speak with you in a little more detail about those provisions. First of all, you are stipulating or have stipulated with the United States that the substance involved in the offense charged in Object One of Count One…of the Indictment is 5 kilograms or more of a mixture and substance containing a detectable amount of … cocaine base, or crack….Do you understand all of that?

**THE DEFENDANT:** (No response.)…

THE COURT: …By entering into this stipulation, then at the time of sentencing I would not permit you or your attorney to argue or present evidence that the substance involved in Object One of Count One of the indictment is anything other than cocaine base, or crack, or is a quantity less than5 kilograms. Do you understand that?

**THE DEFENDANT:** (Nodding.)

**THE COURT:** …that stipulation affects the statutory penalties that will apply in this case. In other words, by stipulating to 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine base, or crack, the statutory

6

penalties that will apply in this case include a sentence of not less than – or include a sentence of not less than 10 years, that is, a mandatory minimum sentence of 10 years, or more than life in prison. Do you understand statutory penalties? … (Apx. 52 – 56).

**Questions Relating To The Appeal Waiver On:**

Though the Court suggested his sentence may be appealed and sent back for re-calculation based on *Dorsey v. United States*, 132 S. Ct. 2321 (2012) (Apx. 49), it questioned Mr. Byrd regarding his understanding of an agreement not to appeal.

> **THE COURT:** Now, you have reserved the right to challenge the conviction and sentence in an appeal or in any post conviction proceeding on four grounds only, and that is: Ineffective assistance of counsel; second, prosecutorial misconduct not known to you at the time of your guilty plea, which is today; third, a sentence in excess of the statutory maximum; and, four, a sentence based on an unconstitutional factor, such as race, religion, national origin, or gender.
>
> Do you understand your reservation of those rights under the terms of your agreement, to waive your right to appeal, and to challenge the conviction and sentence in any post conviction proceeding?
>
> **THE DEFENDANT:** Yes, sir…
>
> (Apx. 57).

**No Inquiry Regarding Possibility of Career Offender Determination:**

The Trial Judge did not inquire whether Appellant Byrd understood that he could be a career offender pursuant to **U.S.S.G. § 4B1.1** that would enhance his criminal history level to VI and would enhance his guideline range to an enhanced

7

level resulting in a recommendation of a more severe sentencing guideline range –

here 322-387 months rather than a sentence recommendation of 262 to 327 months

if Mr. Byrd was not a career offender (at the time of the first sentencing hearing).

(Apx. 81).  See Sentencing Chart U.S.S.G.

**The Pre-Sentence Investigation:**

Relying in part upon one prior felony drug conviction committed when

Appellant was 17 years old and another committed in 2007, the probation officer

preparing the presentence report classified Appellant as a Career Criminal pursuant

to U.S.S.G. § 4B1.1.  The applicable guideline range under U.S.S.G. § 4Bl.l(c)(3)

for a career offender who is also convicted of a 18 U.S.C. § 924(c) offense, and

who is subject to a three-level reduction for acceptance of responsibility, is 262 to

327 months.  The range with the highest minimum term of imprisonment is the

applicable range.  U.S.S.G. § 4B1.1 comment (n. 3(B)).  Therefore, the guideline

range recommended before Appellant's case was remanded was 322 to 387

months.  (Apx. 171, 181).

**18 U.S.C. § 3553 Facts:**

The additional facts available at sentencing revealed the following:

The codefendant and coconspirator in the indictment, Lemonn Washington

pleaded guilty to Count 1.  Mr. Washington was sentenced to 84 months of

incarceration and 10 years of supervised release.  (Apx. 10, 128).

Appellant Byrd, age 28 at the time of the offense. (Apx. 124). He dropped out of school in 8th grade with a grade point average of 0.0. (Apx. 180). He has two dependants and supported them with profits from drug sales. (Apx. 125, 179).

At sentencing, it became clear that Mr. Byrd has had a difficult life. His grandmother and mother raised him. His biological father is listed as "unknown." His maternal grandmother raised him until age 13. When the defendant was ten years old his family was involved in a tragic home fire. Mr. Byrd revealed he was home at the time of the house fire and was able to escape. He was present as sister was killed as a result of the fire. (Apx. 179).

His grandmother died, when the Mr. Byrd was approximately age 13. Thereafter, he moved in with his mother. While living with his mother he was exposed to drug sales and he was "let do what I want to do. "She stated he was "good" and was "respectful." (Apx. 179).

Though Mr. Byrd never married, he has two children age nine and age five. He "sees" his children and supports them. (Apx. 125, 179).

He has a fiancé and before his arrest was assisting in the care of her daughter who is 8 years. (Apx.179).

Mr. Byrd has a substance abuse problem. He has abused alcohol, marijuana, and cocaine. He first consumed alcohol at the age of 15. He first smoked

marijuana at age 14.  He has experimented with snorting cocaine one time at age 17.  (Apx 180).

Mr. Byrd joined the Union Baptist Church where he has been involved as much as he can in their activities and been baptized.  He has also taken advantage of the programs that they offer including additional drug treatment and job training.  (Apx. 131).  He also received drug counseling in prison.  (Apx. 130).

Appellant Byrd has no assets and a negative net worth of $36,5021,00 owing money for unpaid medical bills.  (Apx. at 181).

**The First Sentencing On September 11, 2012:**

Before the first sentencing on September 11, 2012, it was discovered that the plea agreement mistakenly had Mr. Byrd stipulate to possessing and distributing 5 kilograms of crack cocaine when in fact the agreement called for a stipulation to possessing and distributing 280 grams.  The trial judge expressed concern.

> **THE COURT**: All right.  Somebody needs to explain to me what's going on with drug quantity in this case.
>
> **DEFENSE COUNSEL:** Your Honor, if I may, we would make a motion to withdraw the objection that was filed and the motion for leave to file objections.  In speaking to Mr. Byrd, we would ask to withdraw that at this point, and we're ready to proceed with sentencing.
>
> **THE COURT:** As to what quantity?
>
> **MS. STEWART:** At the 280, Your Honor.

10

**THE COURT:** Mr. Galyon – so everybody is in agreement that instead of 5 kilos it's 280?

**AUSA:** Yes, Your Honor…

(Bench conference as follows:)

**THE COURT:** …how did this happen, 5 kilos to 280?

**AUSA:** I think the issue was that it was 5 kilos – it should've been the 280 to trigger the 10-year on the crack cocaine, and it was 5 kilos related to cocaine hydrochloride, but it still had the cocaine base. I think that's where that came into play, so it was – all along it was charged as a (b)(1)(A) offense.

**THE COURT:** It's a big typo, though, and it's one I go through with the defendant individually on, and that really should have been caught at some point.

**AUSA:** True.

**THE COURT:** And I think we're revising it in favor of the defendant, so –…I'm not going to require that it be in writing, but I am going to go back because I understand typos, but this – that's a big one….All right. Well, I'll go through it again.

(Apx. 75-76).

**The Second Colloquy Related to Quantity:**

**THE COURT:** Mr. Byrd, you may recall at the time I originally took your plea agreement in the Rule 11 hearing held in this court, I placed you under oath and asked you a series of questions. At that time your plea – we discussed the fact that your plea agreement contained a provision in which you stipulated to a relevant drug quantity of 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine base, or crack. Do you remember that?

**THE DEFENDANT:** Yeah

11

**THE COURT:** All right. Now, I've been since informed that that quantity was a mistake in quantity, and the actual quantity of crack cocaine that the Government would have requested that you stipulate to and is now – both the Government and your lawyer have advised me that you're stipulating to is a quantity of 280 grams or more of a mixture and substance containing a detectable amount of cocaine base, or crack, that is, a lower quantity. Instead of 5 kilograms, its 280 kilograms [sic]. Do you understand that?

**THE DEFENDANT:** Yes.

**THE COURT:** That is a revision to your plea agreement. Now, it's a revision to your plea agreement very much in your favor because it lowers that quantity substantially. Do you understand that?

**THE DEFENDANT:** Yes, sir.

**THE COURT:** And if I accept this revised quantity, that is, the 280 grams of a mixture and substance containing a detectable amount of crack – cocaine base, or crack, then in that case I will apply the same rules that I advised you of earlier. If I accept this stipulation, then I will not permit you or your attorney to argue that the substance involved in the offense charged in this case is anything other than crack – or I should say with respect to that one prong of the offense is anything other than crack or that it's a substance less than 280 grams of cocaine base, or crack. Do you understand that?

**THE DEFENDANT:** Yes

**THE COURT:** Do you want me to accept the modification to your plea agreement with this revised stipulation?

**THE DEFENDANT:** Yes.

**THE COURT:** All right. Then I will find – yeah, it's certainly in Mr. Byrd's favor, substantially in his favor, to amend his plea agreement in that fashion. But I will find that Mr. Byrd's

stipulation is knowingly and voluntarily entered into,
particularly considered in light of the original stipulation and
the favorable nature of the revision, so I will accept that
stipulation…

(Apx. 78-80).

**The Sentence Imposed On September 11, 2012:**

The Court imposed the following sentence, Count One, 262 months, 5 years

of supervised release and a special assessment of $100.  As to Count Five, 60

Months to run consecutively to the sentence imposed as to Count One, 5 years of

supervised release to run concurrently and a $100 special assessment.  (Apx. 84-

85).

**The Sentence Was Appealed and On Joint Motion of The Parties Remanded
for Re-Sentencing:**

An appeal was noted and taken on the sentence imposed by the trial court on

October 12, 2012.  On joint motion of the United States and Appellant Byrd in

Record No. 12-4813 the Court remanded Appellant Byrd's case to the trial court

on March 21, 2012 with instructions to impose a sentence giving Appellant Byrd

the benefit of the Fair Sentencing Act's revised statutory mandatory minimums as

they applied to the Career Offender calculation based on *Dorsey v. United States*,

132 S. Ct. 2321 (2012).  (Apx. 11, 99, 100, 101).

**A Second Sentencing Hearing Held On July 29, 2013:**

At the second sentencing held on July 29, 2013, Appellant Byrd made objections to the guideline computations and specifically objected to the use of his drug conviction sustained at the age of 17 being used as predicate convictions for Career Criminal under U.S.S.G. § 4B1.1 or base level enhancement under § 2K2.1 of the Federal Sentencing Guidelines. He also moved to withdraw his guilty plea as to Count 5.

The trial judge observed,

> **THE COURT:**… I will say that in Mr. Byrd's case giving him the benefit of all the doubts that there was some unusual circumstances in terms of the stipulation and other things that took place at the sentencing hearing that would give anyone pause as to what was occurring in this case with respect to a number of matters;…

(Apx. 113 – 114).

**The Objections To The Presentence Report:**

> **THE COURT**: Are there any objections to the report, Mr. Jones?...
>
> **THE DEFENDANT**: Me being a career offender.
>
> **THE COURT**: All right. You disagree with your classification as a career offender?
>
> **THE DEFENDANT**: Yes, sir…
>
> **DEFENSE COUNSEL**: Disagreement with the PSR paragraph 34 and the PSR's indication that that is a career offender predicate. The basis of that is that that conviction was sustained when Mr. Byrd was 17 years old and therefore should

14

not be counted. And further he objects to, as best I could find, a PSR reference paragraph 68,[4] but he really objects to his guilty plea as to Count Five to the indictment in this case…

(Apx. 115 – 117).

The Court made the following rulings on Appellant Byrd's objections.

**THE COURT**: Okay. All right. In fairness to Mr. Byrd, in light of the issues addressed previously – or that arose previously, I will consider those objections.

First of all… Under North Carolina law, the age of majority for purposes of criminal prosecution is 16, and the 17, although that might otherwise qualify an individual as a juvenile under federal law, it does not under the state of North Carolina, and, therefore, Mr. Byrd was prosecuted and convicted as an adult….

**THE COURT:** … Count Five, I don't find any evidence to support a finding at this point in time that he should be allowed to withdraw his plea, nor do I find this at this point in time to be the appropriate venue or place for that.

(Apx. 117 – 121).

**THE COURT:** …I will note his objections. I will overrule those objections. I will adopt the presentence investigation report – PSR as amended by the memorandum dated April 22, 2013, with the career offender calculation revised such that we end up with a 31and a six and the amended statutory penalties as set out in that April 22, 2013, memo. There is a mandatory minimum sentence in the case. The resulting advisory guideline calculation is as follows:

---

[4] Paragraph 68 states "Statutory Provisions: The minimum term of imprisonment on Count 1 is 10 years and the maximum term is life. 21 U.S.C. § 841(b)(l)(A). The minimum term of imprisonment on Count 5 is five years and the maximum term is life. 18 U.S.C. § 924(c)(1)(A)(i). The term of imprisonment for Count 5 must be imposed consecutively to any other counts.

15

A total offense level of 31.
A criminal history category of six.
A guideline imprisonment range of 262 to 327months …

(Apx 121).

Appellant Byrd was resentenced as follows:

Count 1, (Object 1) – One Hundred Eighty (180) months
imprisonment, five (5) years supervised release, $100 special
assessment;

Count 5, Sixty (60) months imprisonment to run consecutively
to the sentence imposed as to Count 1, five (5) years supervised
release which shall run concurrently with the supervised release
imposed as to Count 1, $100 special assessment.

(Apx. 13, 152).

## SUMMARY OF ARGUMENT

1.    The trial court abused it's discretion  when it denied Appellant Byrd's
      motion to withdraw his plea of guilty as to count 5 in that,

      A.    The Rule 11 inquiry was inadequate because it did not
            inquire if Appellant Byrd was aware that he could be
            sentenced as a career offender.

      B.    That the plea was not knowing and voluntary because
            Appellant Byrd mistakenly stipulated to having
            distributed 5 kilograms or more of cocaine when in fact
            the plea agreement called for a plea of only 280 grams or
            more of cocaine.

      C.    Appellant reasonably believed the government had
            agreed not to use his conviction on March 7, 2000 when
            he was 17 years of age as a basis to allow him to be
            designated a career offender and thereby facing a much
            longer prison sentence.

16

2.    The trial court abused its discretion when over objection it relied upon a North Carolina drug conviction committed when appellant was 17 as predicate convictions allowing him to be designated a career criminal designation pursuant to U.S.S.G. § 4B1.1.

3.    The District Court's sentence of Appellant  Byrd to a combined sentence of 240 months should be reversed because it  is greater than necessary, unreasonable, and conflicts with the sentencing Goals of 18 U.S.C. § 3553 in that,

A.    The trial court plainly erred in imposing a greater sentence upon Appellant than the sentence imposed upon the codefendant who was sentenced to only 84 month despite having a criminal record and culpability similar to that of Appellant.

B.    The trial court plainly erred in not considering the disparity in sentences received by defendants in like positions who enter pleas in districts that have fast track programs.  Had the trial court done so, it would have determined that a combined sentence of 240 months effect the sentencing goals of 18 U.S.C. § 3553.

C.    The error listed above combined with the facts that were presented at sentencing makes plain and clear that the combined sentence of 240 months is greater than necessary to meet the four express purposes of sentencing are: (1) retribution, (2) deterrence, (3) incapacitation, and (4) rehabilitation. Imposition of a sentence of the statutory mandatory minimum of 10 years followed by a consecutive sentence of 60 months is sufficient to satisfy those four purposes.

4.    Appellant Byrd should be relieved of the appeal waiver in his plea agreement, as his unreasonable sentence has resulted in a miscarriage of justice.

## ARGUMENT

1.    **The trial court abused it's discretion  when it denied Appellant Byrd's motion to withdraw his plea of guilty as to count 5 in that,**

      A.    **The Rule 11 inquiry was inadequate because it did not inquire if Appellant Byrd was aware that he could be sentenced as a career offender.**

      B.    **That the plea was not knowing and voluntary because Appellant Byrd mistakenly stipulated to having distributed 5 kilograms or more of cocaine when in fact the plea agreement called for a plea of only 280 grams or more of cocaine.**

      C.    **Appellant reasonably believed the government had agreed not to use his conviction on March 7, 2000 when he was 17 years of age as a basis to allow him to be designated a career offender and thereby facing a much longer prison sentence.**

### STANDARD OF REVIEW

The Standard of Review for a district court's denial of a motion to withdraw a guilty plea is abuse of discretion.  *United States v. Dyess*, 478 F.3d 224, 237 (4th Cir. 2007).  *United States v. Bowman*, 348 F.3d 408 (4th Cir. 2003)

### ARGUMENT

Although the district court advised appellant that he was facing a 10-year mandatory minimum and a maximum penalty of life in prison it never advised him that his criminal history would put him at risk of being designated as a career offender.  The trial court was or should have been aware that Appellant Byrd was likely a career offender.  This is because as a part of the plea agreement, the

government agreed not to file papers advising the court of prior drug convictions in return for an appeal waiver.

The trial court asked appellant if his counsel had explained to him the various factors that the court must consider in sentencing, he never asked appellant if his counsel had discussed the potential guideline range or ranges with him.  In addition, nothing was said as to what his counsel advised him as to what his likely guideline range would be.

As one would expect, Appellant Byrd was determined to be a career offender based upon 2 prior drug convictions.  One occurred on March 7, 2000 when Mr. Byrd was 17 years old.  The trial judge did not advise Mr. Byrd in the Rule 11 inquiry that the conviction could be used by the pre-sentence writer in calculating sentencing guidelines and that it could be considered for other purposes such are determining if Mr. Byrd was a career offender.

Appellant Byrd should have been advised on the record at his Rule 11 inquiry that he was facing a potential career offender like sentence.  In *Appleby v. Warden*, *N. Reg 'IJail & Carr. Facility*, 595 F.3d 532, 537 (4th Cir. 2010) this Court stated that "A guilty plea is voluntary if "'entered by one fully aware of the *direct* consequences" of the plea.  *Id.* at 755 (emphasis added) (quoting *Shelton v. United States*, 246 F.2d 571, 572 n.2 (5th Cir. 1957) (en banc), rev'd on confession of error on other grounds, 356 U.S. 26, 78 S. Ct. 563, 2 L. Ed. 2d 579 (1958))."

19

*Appleby* also set forth the test for determining whether or not an action was a direct consequence that had to be included in the Rule 11 colloquy or a collateral consequence that did not:

> "In defining the two terms, this Court in *Cuthrell* held that "[t]he distinction between 'direct' and 'collateral' consequences of a plea, while sometimes shaded in the relevant decisions, turns on whether the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment." *Cuthrell.* 475 F.2d at 1366; *see also United States v. Bouthot.* 878 F.2d 1506.1511 (1st Cir. 1989).

The Ninth Circuit noted that "where the consequence is contingent upon action taken by an individual or individuals other than the sentencing court ... the consequence is generally 'collateral." *Littlejohn*, 224 F.3d at 965. Courts have held that collateral consequences of a plea include deportation, *United States v. Russell*, 686 F.2d 35, 39, 222 U.S. App. D.C. 313 (D.C. Cir. 1982); the potential loss of federal benefits, *United States v. Morse*, 36 F.3d 1070, 1072 (11th Cir. 1994); the use of a conviction as an aggravating circumstance in sentence for an unrelated charge, *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994); the possibility of consecutive sentences, *Wall v. United States*, 500 F.2d 38, 39 (10th Cir. 1974) (per curiam); a subsequent mandatory [**23] mental health commitment proceeding, *George*,732 F.2d at 110; and the possibility of commitment for life as a sexually dangerous person, *Steele*, 365 F.3d at 17. Furthermore, several circuit courts of appeals have explicitly held that possible subsequent classification of the

defendant as a recidivist if he committed a future felony is a collateral, and thus not a direct, consequence of a plea.  See, e.g., *United States v. Salerno*, 66 F.3d 544, 551 (2d Cir. 1995); *Salmon*, 944 F.2d at 1130.  But see *Berry v. United States*, 412 F.2d 189, 191-92 (3d Cir. 1969) (holding that the fact that the defendant was ineligible for parole because of his status as a recidivist was a consequence of which he must have been informed during the plea colloquy)."  *Id.* at 540-541.

Here, the record shows Appellant Byrd's guilty plea was not voluntary.  It is clear from the record there was confusion over the amount of cocaine base stipulated to be a part of the offense and thus the sentence that Appellant faced.[5]

At the second sentencing hearing, Appellants Byrd's confusion about his sentencing exposure at the time of his plea came into focus.  He wrote a pro se letter to the court.  (Apx. 102).  At his re-sentencing, Appellant, himself made an oral motion to withdraw his guilty plea to the gun charge in Count 5.  He also objected to the use of the conviction when he was 17.  He moved to set aside his designation as a career offender.

---

[5] At the plea Mr. Byrd and his counsel stipulated to 5 kilograms of cocaine base. At sentencing it was revealed the 5 kilogram amount was a mistake and the actual amount stipulated to was 280 grams.  A plea to 5 kilograms would result in a substantially longer prison sentence than 280 grams.

As his new counsel indicated at the sentencing,

> **DEFENSE COUNSEL:** "I'm not sure Mr. Byrd necessarily had the clearest communication originally going through. To the extent the Court is troubled, I don't think the Court is off base.

> **THE COURT:** And I am troubled, Mr. Jones, but I have nothing but confidence in the representation he's received since that time,…"

Had Appellant Byrd been advised he would face the enhanced sentence by being designated a career offender, all indications are the plea would not have taken place.

Clearly the imposition of career offender like guidelines under criminal history category VI is a direct action of the sentencing court and not a collateral action a separate administrative body such as immigration. The designation of a criminal history category VI and the resultant guideline range is not discretionary or arbitrary, rather it is the result of a specific directives under the United States Sentencing Guidelines. Although a district judge could depart, such departures are in fact rare. Therefore, Appellant Byrd should have been advised that he was facing a sentence as a career offender.

Because he was not so advised, the Rule 11 inquiry was defective. Mr. Byrd's motion to withdraw his plea to Count 5 should have been granted.

**2.** **The trial court abused its discretion when over objection it relied upon a North Carolina drug conviction committed when appellant was 17 as predicate convictions allowing him to be designated a career criminal designation pursuant to U.S.S.G. § 4B1.1**.

### A.    Standard of Review

The Standard of Review as noted is abuse of discretion.

### B.    Argument

Under the abuse of discretion standard, the appellate court must determine whether the district court's exercise of discretion, considering the law and the facts, was arbitrary or capricious. *United States v. Mason*, 52 F.3d 1286, 1289 (4th Cir. 1995). A district court by definition abuses its discretion when it makes an error of law. *United States v. Stitt*, 250 F.3d 878, 896 (4th Cir. 2001). *Koon v. United States*, 518 U.S. 81, 100 (1996). Under this standard, a district court by definition abuses its discretion when it makes an error of law.

U.S.S.G. § 4B1.1 states in pertinent part :

> (a) A defendant is a career offender if
>
> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction;
>
> (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and
>
> (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.2 note 1 indicates

> A conviction for an offense committed prior to age eighteen is
> an adult conviction if it is classified as an adult conviction
> under the laws of the jurisdiction in which the defendant was
> convicted (e.g., a federal conviction for an offense committed
> prior to the defendant's eighteenth birthday is an adult
> conviction if the defendant was expressly proceeded against as
> an adult).

The Eighth Amendment to the United States Constitution states:

> "Excessive bail shall not be required, nor excessive fines
> imposed, nor cruel and unusual punishments inflicted"

The Fourteenth Amendment to the United States Constitution states in

pertinent part:

> "No State shall make or enforce any law which shall abridge
> the privileges or immunities of citizens of the United States; nor
> shall any State deprive any person of life, liberty, or property,
> without due process of law; *nor deny to any person within its
> jurisdiction the equal protection of the laws*."

As the trial judge correctly noted, though Appellant Byrd would have been

treated as a juvenile under federal law, under North Carolina law, 17 year old

defendants are adults who receive adult sentences when they are convicted of

crimes. (Apx. 118). In making that holding, the trial court violated Appellant's

right to equal protection under the law under the Fourteenth Amendment to the

Constitution.

Appellant's Eighth Amendment rights against cruel and unusual punishment

were also violated when the conviction occurring when he was 17 years old was

24

used as a predicate felony to enhance his sentence under U.S.S.G. § 4B1.1 by making him a career offender.

The Supreme Court has visited the issue of what constitutes cruel and unusual punishment for offenders under the age of 18 years. In *Roper v. Simmons*, 543 U.S. 55, 125 S. Ct. 1183 (1995) the Supreme Court ruled that it constituted cruel and unusual punishment to execute a defendant under the age of 18 years old. In *Graham v. Florida*, 130 S. Ct. 2011 (2010) the Supreme Court ruled that imposing a sentence of life without parole on a juvenile is unconstitutional for crimes excluding murder. In *Miller v. Alabama*, 132 S. Ct. 2455 (2012) the Supreme Court went further and held that mandatory sentences of life without the possibility of parole are unconstitutional for juvenile offenders including murder.

By analogy, it constitutes cruel and unusual punishment to enhance a sentence on a defendant by designating him a career criminal based upon crimes committed under the age of 18.

We ask this court to extend *Roper*, *Miller*, *and Graham*, *supra* to preclude the use of drug crimes committed before a defendant reaches the age of 18 as an enhancement making a defendant a career offender under U.S.S.G. § 4B1.1

Therefore, the conviction based upon conduct committed when Appellant was 17 years old should not be used as a predicate for Career Criminal enhancements.

**3.** **The District Court's Sentence of Appellant Byrd to a combined sentence of 240 months should be reversed because it is greater than necessary, unreasonable, and conflicts with the sentencing Goals of 18 U.S.C. § 3553 in that,**

    **A.** **The trial court erred in imposing a greater sentence upon Appellant than the sentence imposed upon the codefendant who was sentenced to only 84 months despite having a criminal record and culpability similar to that of Appellant.**

    **B.** **The trial court plainly erred in not considering the disparity in sentences received by defendants in like positions who enter pleas in districts that have fast track programs. Had the trial court done so, it would have determined that a combined sentence of 240 months effect the sentencing goals of 18 U.S.C. § 3553.**

    **C.** **The error listed above combined with the facts that were presented at sentencing makes plain and clear that the combined sentence of 240 months is greater than necessary to meet the four express purposes of sentencing are: (1) retribution, (2) deterrence, (3) incapacitation, and (4) rehabilitation. Imposition of a sentence of the statutory mandatory minimum of 10 years followed by a consecutive sentence of 60 months is sufficient to satisfy those four purposes.**

## STANDARD OF REVIEW

This Court reviews a District Court's ultimate sentencing decision for substantive reasonableness. *Gall v. United States*, 552 U.S. 38, 128 S. Ct. 586, 594 (2007).

In reviewing a sentence for substantive reasonableness, this Court applies a "deferential abuse-of-discretion standard." *United States v. Carter*, 564 F.3d 325, 328 (4th Cir. 2009) (quoting *Gall v. United States*, 552 U.S. 38 (2007)). See also *United States v. Layton*, 564 F.3d 330, 335 (4th Cir. 2009), *cert. denied*, 2009 U.S.

26

LEXIS 6486.  Similarly, a challenge that a sentence is procedurally unreasonable is reviewed for an abuse of discretion.  *United States v. Lynn*, 592 F.3d 572, 576 (4th Cir. 2010).

In *United States v. Booker***,** 543 U.S. 220, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory guideline system was unconstitutional, *id.* at 233, 236, 242, and excised a portion of the statute that created the Guidelines, thereby making "the Guidelines effectively advisory." *Id.* at 245.  As a consequence, the federal sentencing statute still "requires a sentencing court to consider Guidelines ranges," but "permits the court to tailor the sentence in light of other statutory concerns as well," most specifically the sentencing mandate as put forth by 18 U.S.C. § 3553(a).  *Id.* at 245-46.

Absent procedural error, the U.S. Supreme Court has generally held that appellate courts can review unpreserved claims only for plain error. If an error is not properly preserved, appellate court authority to remedy the error is strictly circumscribed to plain-error review.  *United States v. Lynn*, 592 F.3d 572, 2010 U.S. App. LEXIS 1927, HN 12 (4th Cir. 2010).

> **The trial court erred in imposing a greater sentence upon Appellant than the sentence imposed upon the codefendant who was sentenced to only 84 month despite having a criminal record and culpability similar to that of Appellant.**

Lemonn Washington and Appellant Byrd were codefendants in the indictment who were similarly situated.  Both had prior drug convictions.  Papers

were introduced advising the Court of Washington's prior drug conviction thereby

doubling his exposure.  Those papers could have been introduced in Appellant

Byrd's case.  Both entered guilty pleas to the same criminal conduct.  The factual

basis for the pleas of both defendants is almost identical.  Washington pleaded

guilty to Count 1, the conspiracy, Byrd to Count 1 and Count 5.

Sentencing disparity was created when the trial court sentenced Appellant

Byrd. Washington was sentenced to 84 months of incarceration.  Appellate Byrd

was sentenced to a 240 month aggregate sentence – to almost 3 times as much time

in prison as Lemonn Washington.

The Supreme Court made it clear in *Gall v. United States*, 552 U.S. 38

(2007), that two separate aspects of the sentencing statute – § 3553(a)(6) and

§ 3553(a)(2) – afford district judges this discretion.  Section 3553(a)(6) directs the

district court to consider "the need to avoid unwarranted sentence disparities

among defendants with similar records who have been found guilty of similar

conduct."

Fair sentencing is individualized sentencing.  Unwarranted disparity is

defined as different treatment of *individual* offenders who are similar in relevant

ways, or similar treatment of *individual* offenders who differ in characteristics that

are relevant to the purposes of sentencing.

28

**The trial court plainly erred in not considering the disparity in sentences received by defendants in like positions who enter pleas in districts that have fast track programs.  Had the trial court done so, it would have determined that a combined sentence of 240 months effect the sentencing goals of 18 U.S.C. § 3553.**

Some Districts, but not all, use fast-track programs to induce quick guilty pleas in some drug cases and immigration reentry cases.  These programs allow for downward departures to give defendants sentencing concessions in exchange for a prompt guilty plea and the waiver of procedural rights such as the right to appeal.  See U.S.S.G. § 5K3.1.

The Districts that have such programs enter into agreements giving up to a four-level downward departure.  U.S.S.G. § 5K3.1

The Middle District of North Carolina has no fast track program.  Indeed this court has held that the lack of a fast track program is not a ground for a downward departure.[6]  *United States v. Perez-Pena*, 453 F.3d 236 (4th Cir. 2006).

---

[6]There is a Circuit split as to whether the lack of a fast track program represents an appropriate ground on which to vary from a Guideline sentence.  The Fifth Circuit has held that the sentencing disparities resulting from fast track do not reflect the sort of disparity by which a sentencing court may vary from the guideline range.  *United States v. Gomez-Herrera*, 523 F.3d 554, 562 (5th Cir. 2008).  In contrast, the First and Third Circuits have held that the fast track disparity is precisely the sort of disparity permitting a below-guideline sentence.  See *United States v. Arrelucea-Zamudio*, 581 F.3d 142, 149 (3d Cir. 2009); *United States v. Rodriguez*, 527 F.3d 221, 229 (1st Cir. 2008) (holding that "consideration of fast-track disparity is not categorically barred as a sentence-evaluating datum within the overall ambit of 18 U.S.C. § 3553(a)").

The Third Circuit has held that the fast-track consideration should not be limited to Section 3553(a)(6), but rather the judge should "consider a variance under the *totality* of the [Section] 3553(a) factors (rather than one factor in isolation) . . . [and] a variance would be reasonable in an appropriate case." ***United States v. Arrelucea-Zamudio***, 581 F.3d 142, 149 (3d Cir. 2009).

The Judge below did not consider that disparity as a part of the totality of circumstances under § 3553(a) to arrive at a just sentence.

Appellant Byrd presents the appropriate case envisioned by ***Arrelucea-Zamudio***, *supra.*  Appellant Byrd's early plea, lack of violent crimes in his background, and criminal history with overstated seriousness all justify such a four level reduction lowering his offense level from 34 to 30.  (Apx. 123).  With a criminal history category of  VI, Appellant Byrd's guideline range would be 168 to 210 months.

Because this issue was not raised below, the court should review the matter under a plain error standard.

> **The error listed above combined with the facts that were presented at sentencing makes plain and clear that the combined sentence of 240 months is greater than necessary to meet the four express purposes of sentencing are: (1) retribution, (2) deterrence, (3) incapacitation, and (4) rehabilitation. Imposition of a sentence of the statutory mandatory minimum of 10 years followed by a consecutive sentence of 60 months would is sufficient to satisfy those four purposes.**

The statutory minimum total sentence of 180 months or fifteen years of incarceration satisfies the goal of retribution and deterrence and incapacitation. Appellant Byrd has no violent conduct in his background. As noted at his sentencing, his involvement with drugs led to his problems with the criminal justice system. (Apx. 123 – 124). For that reason the goal of rehabilitation can be accomplished by the Court's recommendation for drug counseling and treatment while incarcerated. Mr. Byrd is described as respectful and considerate. Once he overcomes his substance abuse problems, we submit he will not be a threat to become a recidivist. He had no criminal record before he began using drugs. With the help of counseling in prison and drug counseling provided by the church he has joined Mr. Byrd's substance abuse problem can be overcome.

The trial court plainly erred. The minimum mandatory of 10 years as to count1 and a consecutive 60 months as to count 5 would comply with the sentencing goals of 18 U.S.C. § 3555.

Imposition of a sentence that is greater than necessary to meet those purposes is reversible. In accordance with ***United States v. Collington***, ***supra***, Appellant Byrd's sentence should be reversed.

### **Appellant Byrd should be Relieved of the Appeal Waiver, as His Unreasonable Sentence has Resulted in a Miscarriage of Justice.**

"[Even a knowing and voluntary waiver of the right to appeal cannot bar the defendant from obtaining appellate review of certain claims." *United States v. Johnson*, 410 F.3d 137, 151 (4th Cir. 2005). In addition to examples such as when the defendant is sentenced in excess of the statutory maximum or sentenced incorrectly because of an error directly attributable to counsel, "appellate courts refuse to enforce an otherwise valid waiver if to do so would result in a miscarriage of justice." *Id.* (quoting *United States v. Andis*, 333 F.3d 886, 891 (8th Cir. 2003)).

The First, Eighth, Tenth, Eleventh and D.C. Circuits have ruled similarly. See *United States v. Guillen*, 561 F.3d 527, 531 (D.C. Cir. 2009); *United States v. Snelson*, 555 F.3d 681 (8th Cir. 2009); *United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004) (en banc); *United States v. Khattak*, 273 F.3d 557, 563 (3d Cir. 2001) ("In sum, we conclude that plea-agreement waivers of the right to appeal from imposed sentences are presumptively valid (if knowing and voluntary), but are subject to a general exception under which the court of appeals retains inherent power to relieve the defendant of the waiver, albeit on terms that are just to the government, where a miscarriage of justice occurs.").

In the Second Circuit, when a broad waiver that purports to waive the right to appeal whatever guidelines range determines is applicable, the waiver may not stand and may be severed from the plea agreement. See, e.g., *United States* v. *Goodman*, 165 F.3d 169,174 (2d Cir. 1999).

32

In the Third Circuit, to determine whether a "miscarriage of justice "would result, a panel considers the clarity of the alleged error, its gravity, its nature, and the effect of that error on the parties.  See *Khattak*, 273 F.3d 557, 563 (3d Cir. 2001).  In some circumstances, an unreasonable sentence alone might qualify as a miscarriage of justice.  *United States v. Jackson*, 523 F.3d 234, 244 (3d Cir. 2008); *United States v. Shedrick*, 493 F.3d 292, 298 (3d Cir. 2007).  Plain error may also qualify.  See *Hahn*, 359 F.3d at 1327.

The miscarriage of justice present here is the result of the unreasonable total sentence of 240 months.  As demonstrated above, that sentence is greater than necessary, violates the sentencing mandate, and is reversible.

Because of this sentencing error, Appellant Byrd asks the Court to find that enforcement of the appeal waiver would result in a miscarriage of justice and to set the waiver aside.

## CONCLUSION

For these reasons, Appellant Byrd asks the Court to review his sentence for substantive reasonableness.  He asks the Court to find that his total sentence of 240 months is reversible.  He asks the Court to vacate that sentence and remand the matter to the District Court for a new sentencing hearing, with language or instructions concerning the unreasonableness of a total sentence of 240 months in this particular case and with instructions that the court should consider his inability

to plead under a fast track program in accordance with U.S.S.G. § 5H1.3 in

determining his sentence.

## ORAL ARGUMENT IS REQUESTED

Accordingly Appellant Byrd requests oral argument to permit the Court to

understand and rule on the issues raised.

Respectfully Submitted,

Thomas Marshall Byrd
By: /s/ Ferris Ridgely Bond

Counsel

Ferris Ridgely Bond, Esquire
Bond & Norman
777 Sixth Street NW #410
Washington, DC 20001
(202) 682-4100
Facsimile: (202) 207-1041
ferrisbond@bondandnorman.com

Counsel for Appellant Thomas Marshall Byrd

34

## CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

    [ X ] this brief contains [*8,252*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

    [    ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    [ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

    [    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: <u>March 4, 2014</u>              <u>/s/ Ferris R. Bond</u>
                                         *Counsel for Appellant*

# CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 4th day of March, 2014, I caused this Brief of

Appellant and Joint Appendix to be filed electronically with the Clerk of the Court

using the CM/ECF System, which will send notice of such filing to the following

registered CM/ECF users:

> Randall S. Galyon
> OFFICE OF THE U.S. ATTORNEY
> 101 South Edgeworth Street, 4th Floor
> Greensboro, North Carolina  27401
> (336) 333-5331
>
> *Counsel for Appellee*

I further certify that on this 4th day of March, 2014, I caused the required

copies of the Brief of Appellant and Joint Appendix to be hand filed with the Clerk

of the Court and a copy of the Sealed Volume of the Joint Appendix to be served,

via UPS Ground Transportation, upon counsel for the Appellee, at the above

address.

> /s/ Ferris R. Bond
> *Counsel for Appellant*